RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MEAD VEST,

　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

RESOLUTE FP US INC.,

　　　　　　　　　*Defendant-Appellee*.

No. 18-5046

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:17-cv-00196—Thomas W. Phillips, District Judge.

Decided and Filed:  October 10, 2018

Before:  SILER, GRIFFIN, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  R. Scott Wilson, ERIC BUCHANAN & ASSOCIATES, PLLC, Chattanooga, Tennessee, for Appellant.  Ian H. Morrison, Jules A. Levenson, SEYFARTH SHAW LLP, Chicago, Illinois, for Appellee.

　　GRIFFIN, J., delivered the opinion of the court in which SILER, J., joined.  STRANCH, J. (pp. 8–10), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

　　GRIFFIN, Circuit Judge.

　　Plaintiff Mead Vest contends defendant Resolute FP US Inc. breached its fiduciary-duty obligations set forth in the Employee Retiree Income Security Act when it failed to notify her

late husband of his right to convert a group life insurance policy to an individual life insurance policy after he ceased employment and began drawing long-term disability benefits.  The district court ruled plaintiff did not adequately plead a breach-of-fiduciary-duty cause of action.  We agree and affirm.

I.

Arthur Vest worked nearly forty years for Resolute.  During his employment, Resolute offered group life insurance benefits ("the Plan") to its employees in the form of base and optional life insurance coverage; Resolute provided coverage equal to an employee's annual salary and permitted employees to purchase additional optional coverage.  Arthur purchased an additional $300,000 of coverage.

Due to complications arising from diabetes, Arthur ceased working in September 2015, and began drawing short- and then long-term disability benefits.  Under the Plan, employees maintained base life insurance coverage when receiving long-term disability benefits, but lost optional coverage.  However, employees had "the right to port or convert" the expiring additional group coverage to individual coverage within 31 days of ending active employment.  Accordingly, Resolute ended Arthur's optional coverage on May 18, 2016.  Resolute did not, however, provide him "with any information concerning his right to port or convert the coverage that ended."  He died in October 2016, and Resolute's life insurance carrier paid Vest's beneficiary, plaintiff here, only the base coverage amount.

Mead Vest commenced this one-count ERISA action thereafter.  She alleges Resolute breached its fiduciary duty by failing to inform Arthur of his right to port or convert the optional life insurance coverage and requests "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The district court held Resolute had no such duty, and dismissed the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Giasson Aerospace Science, Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 338 (6th Cir. 2017).  Under

that rule, the district court may dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We accept the truth of all of plaintiff's well-pleaded material allegations and only "affirm the district court's grant of the motion . . . if the moving party is entitled to judgment as a matter of law." *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

## III.

ERISA "establish[es] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . provid[es] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." § 1104(a)(1). It must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). A beneficiary may sue the plan, as plaintiff has done here, "to obtain other appropriate equitable relief." § 1132(a)(3).

"[T]he contours of an ERISA fiduciary's duty to disclose information to beneficiaries" are well defined. *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 572 (6th Cir. 2013) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 450 (6th Cir. 2002)). A fiduciary may not be liable "for a failure to disclose information that it is not required to . . . disclose," for "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405, 406 (6th Cir. 1998) (en banc). However, we have recognized three conditions under which a fiduciary may breach its disclosure duty:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider on its own

initiative provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*Haviland*, 730 F.3d at 572 (quoting *Sprague*, 133 F.3d at 406) (emphasis omitted).

In dismissing plaintiff's complaint, the district court drew heavily from—and ultimately distinguished—our decision in *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, 548 (6th Cir. 1999), reasoning she failed to plead "unique facts or circumstances" showing defendant knew its "silence might be harmful" and thus failed to establish her entitlement to equitable relief. It was right to do so.

*Krohn* illustrates how a fiduciary may be liable for providing misleading or inaccurate information. An automobile accident left Margaret Krohn permanently disabled. 173 F.3d at 544. Her husband sought information from her employer about her benefits' coverage and only received information about her short-term disability options. *Id.* at 545. She filed suit, claiming the plan administrator breached its fiduciary duty by failing to provide additional information about her long-term disability benefits. *Id.* at 546. We agreed, noting that fiduciaries "must give complete and accurate information *in response to participants' questions*," and that providing "materially misleading" information, whether negligently or intentionally, or by statement or omission, breaches this duty. *Id.* at 547 (citations omitted and emphasis added). In so holding, we followed the lead of several of our sister circuits:

> *[O]nce an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation*, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire. . . . [T]he duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.

*Id.* at 547–48 (internal citations omitted and emphasis added).

We then held "Krohn's failure to specifically request information from Huron Memorial about long-term disability benefits did not relieve the hospital of its fiduciary duty to provide complete information about her disability insurance options." *Id.* at 548–49. This was because

"Huron Memorial received notice repeatedly that the plaintiff would be eligible for and would need long-term disability benefits." *Id.* at 549. This was similar, we reasoned, to a decision from the D.C. Circuit involving an HIV-positive employee's request to his insurer for information about his *conversion* rights under the policy, but who was told that he had no rights to *continue* his coverage (and this difference in terms mattered). *Id.* at 548–49 (citing *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990)). The D.C. Circuit held for the employee, commenting that "[r]egardless of the precision of his questions, *once a beneficiary makes known his predicament*, the fiduciary is under a duty to communicate . . . all material facts in connection with the transaction which the trustee knows or should know." *Eddy*, 919 F.2d at 751 (citation omitted and emphasis added). Our subsequent case law applying *Krohn* continues to require this question-and-response pattern. *See, e.g.*, *Gregg. v. Trans. Workers of Am. Int'l*, 343 F.3d 833, 846–48 (6th Cir. 2003).

In plaintiff's view, *Krohn* dictates the outcome of this case. After all, the argument goes, Resolute should have known conversion rights were important to Arthur Vest because he purchased extra life insurance during his employment and had to go on long-term disability leave due to his diabetes, which "mad[e] it more likely that he might, in fact, die." We disagree.

Plaintiff's allegation that Resolute was required to disclose life insurance conversion information falls outside all three of *Sprague*'s conditions for fiduciary liability. Her claim plainly does not fall within *Sprague* condition three (not receiving future forecasts required by ERISA or its implementing regulations). Nor does it satisfy, like the claim in *Krohn*, *Sprague* condition one—receiving a misleading or inaccurate answer in response to a question. As discussed, *Krohn* dealt with an affirmative request for information, which was met with an affirmative omission. Here, plaintiff does not contend her breach of fiduciary duty claim rests on a request to Resolute. In the district court's words, plaintiff's complaint lacks specific allegations concerning communications between the Vests and Resolute to show the Vests "requested information regarding [Arthur's] benefits until after his death or that they communicated an interest in maintaining certain benefits prior to his death," or that Resolute "knew of specific facts related to his health condition . . . or that he would never return to work."

That leaves us with the plan provider's own-initiative condition (*Sprague* condition two) but the complaint fails to allege either a misrepresentation or inaccurate statement by Resolute regarding Arthur Vest's conversion rights. *See, e.g.*, *James*, 305 F.3d at 453–56. First, *Sprague* makes clear that a failure-to-disclose claim cannot proceed when nothing requires the fiduciary to expressly disclose the information at issue. 133 F.3d at 406. "ERISA does not contain any provision that requires a plan administrator to provide notice to plan participants other than a summary plan description and information of the benefits plan as discussed under 29 U.S.C. §§ 1021(a)(1) and 1022." *Walker v. Fed. Exp. Corp.*, 492 F. App'x 559, 566 (6th Cir. 2012). Neither ERISA nor the Department of Labor's implementing regulations require summary plan descriptions to contain conversion information, *see* §§ 1021(a)(1), 1022; 29 C.F.R. § 2520.102-3, and plaintiff herself concedes "there is no general duty requiring ERISA fiduciaries to provide life insurance conversion notices." Second, and as the district court correctly highlighted, plaintiff does not contend Resolute was required "to provide information regarding conversion rights beyond that contained in the [summary plan description]." Indeed, the Summary Plan Description details that insurance "will cease" upon termination of active employment, that an employee "may convert the amount that ends to an individual Life Insurance policy," and that "Totally Disabled" employees, like Arthur Vest, "may be eligible for continued Life Insurance coverage subject to premium payment."[1]

Finally, plaintiff's complaint contains no specific facts indicating Resolute knew the ability to convert the optional life insurance would be important to Arthur Vest. *Krohn* requires distinct factual allegations showing Resolute knew "that [its] silence might be harmful," 173 F.3d at 548, and plaintiff's complaint is devoid of these requisite facts.

---

[1]We, like the district court, may consider the Summary Plan Description at this stage because it was referred to in the complaint and central to plaintiff's claim. *See Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 637–38 (6th Cir. 2016). Plaintiff does not contend Resolute failed to provide a copy of the Summary Plan Description to Arthur. *See Walker*, 492 F. App'x at 566.

Accordingly, we agree with the district court that plaintiff did not adequately plead an ERISA breach-of-fiduciary-duty claim.

## IV.

We affirm the district court's judgment.

---

**DISSENT**

---

JANE B. STRANCH, Circuit Judge, dissenting.  I agree with much of the majority opinion's description of the facts and of the fiduciary duties imposed by ERISA.  But because I believe that the district court failed to correctly analyze one of the conditions for fiduciary liability that we established in *Sprague*, I respectfully dissent.

At issue here is the second *Sprague* condition, which applies where a plan provider "on its own initiative provide[s] misleading information." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 406 (6th Cir. 1998) (en banc).  After almost four decades of work at Resolute, Arthur Vest left employment due to disability in September 2015.  Without any solicitation from the Vests, Resolute sent the Vests a notice, the May 23, 2016 Employee Benefit Summary Report (Benefits Summary), that contained information about a number of benefits, including the life insurance plan in question.  This was not a document required by ERISA.  The Benefits Summary omitted material information—namely, it failed to state that Mr. Vest needed to act within 31 days to convert his optional group life insurance policy to an individual life insurance policy.  Mr. Vest carried $300,000 in optional life insurance but failed to convert the policy within 31 days.  Upon his death, Mrs. Vest received only the basic life insurance benefit of $100,000.

I conclude that Mrs. Vest has stated a plausible claim for breach of fiduciary duty under *Sprague*'s own-initiative condition because Resolute's omission rendered the Report misleading.  The majority opinion states that Mrs. Vest's claim for breach of fiduciary duty cannot fall within the own-initiative category because she does not "allege either a misrepresentation or inaccurate statement by Resolute regarding Arthur Vest's conversion rights." (Maj. Op. at 6)  That is one way to violate *Sprague*'s second condition.  But we have also explained that a material omission qualifies as misleading information.  *See Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) ("Furthermore, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.").  *Krohn*'s holding that a material omission in response to a question (the first

*Sprague* condition) can be misleading is likewise applicable to a material omission in a document the plan provider chooses to send (the second *Sprague* condition).

The majority opinion also concludes that *Sprague*'s second condition does not apply because there was no requirement for Resolute to provide a conversion notice beyond what was set forth in the Summary Plan Description (SPD). (Maj. Op. at 6) But *Sprague*'s own-initiative condition is exactly that—an action of the employer's own initiative, not one required by ERISA. And nothing in *Sprague* or its progeny indicates that the second condition applies only where there is a disclosure requirement. Indeed, *James v. Pirelli Armstrong Tire Corp.*, our circuit's primary case on the own-initiative condition, says otherwise:

> Turning back to *Sprague*, although we found that there was no breach of fiduciary duty where GM had issued booklets containing a reservation of rights clause, *Sprague* does not stand for the proposition that a reservation of rights provision in a SPD necessarily insulates an employer from its fiduciary duty to provide "complete and accurate information" when that employer on its own initiative provides inaccurate and misleading information about the future benefits of a plan. Indeed, *Sprague* explicitly allows for a breach of fiduciary duty claim under such a circumstance. Were it otherwise, an employer or plan administrator could provide, on its own initiative, false or inaccurate information about the future benefits of a plan without breaching its fiduciary duty under ERISA, simply because of the existence of a reservation of rights provision in the plan. However, this would be contrary to the basic concept of a fiduciary duty, which "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn*, 173 F.3d at 548; *see also Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668 (2d Cir. 1994) (noting that "when a plan administrator speaks, it must speak truthfully").

305 F.3d 439, 454–55 (6th Cir. 2002). Just as the reservation of rights in *James* did not control the own-initiative analysis, including a conversion notice in the SPD (which here is not a paragon of clarity) does not relieve Resolute of its duty to provide full and complete information when providing, on its own initiative, the Benefits Summary.

Finally, the majority concludes that Mrs. Vest did not satisfy *Krohn*'s requirements because her complaint does not include "factual allegations showing Resolute knew 'that [its] silence might be harmful.'" (Maj. Op. at 6 (quoting *Krohn*, 173 F.3d at 548)). But Resolute sent Mr. Vest a Benefits Summary stating that his additional life insurance coverage was no longer effective without mentioning his conversion rights. At the motion to dismiss stage, we may

consider this undisputed fact and draw the "reasonable inference," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that Resolute knew its silence might cause the Vests to lose the $300,000 in coverage that they had purchased.

The majority opinion affirms the decision of the district court to dismiss Mrs. Vest's complaint for failure to state a claim upon which relief can be granted. At this stage of the case, I would hold that Mrs. Vest has stated a claim for which *Sprague* provides the possibility of relief. Therefore, I respectfully dissent.