RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RUTH MAE CHELF,

*Plaintiff-Appellant*,

*v.*

No. 20-6097

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

*Defendant*,

ADMINISTRATIVE COMMITTEE FOR THE ASSOCIATES'
HEALTH AND WELFARE PLAN; WAL-MART
ASSOCIATES, INC.,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:17-cv-00736—Gregory N. Stivers, District Judge.

Argued: June 10, 2021

Decided and Filed: April 12, 2022

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Andrew M. Grabhorn, GRABHORN LAW | INSURED RIGHTS®, Louisville, Kentucky, for Appellant. J. Gordon Howard, RUSSELL, OLIVER & STEPHENS, PLC, Memphis, Tennessee, for Appellees. **ON BRIEF:** Andrew M. Grabhorn, Michael D. Grabhorn, GRABHORN LAW | INSURED RIGHTS®, Louisville, Kentucky, for Appellant. J. Gordon Howard, RUSSELL, OLIVER & STEPHENS, PLC, Memphis, Tennessee, for Appellees.

———————————

## OPINION

———————————

JANE B. STRANCH, Circuit Judge. Elmer Chelf, a former employee of Wal-Mart, was on long-term disability leave when he passed away. His widow, Ruth Mae Chelf, was denied benefits under his work-based optional term life insurance policy. She brought claims against Wal-Mart and the Plan Administrator (collectively, Wal-Mart) for breach of fiduciary duty pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA).[1] Her suit alleges that Wal-Mart breached its fiduciary duty to Mr. Chelf in several ways, including by assessing certain premiums in error; by failing to inform him that his premiums were assessed in error; by failing to remit premiums to Prudential to cover his optional life insurance policy resulting in that policy's termination; by failing to inform Mr. Chelf that his accrued paid time off (PTO) could cover his life insurance premiums; and by failing to notify him of his right to convert his term life insurance policy. Wal-Mart filed a motion to dismiss, which the district court granted, dismissing Ms. Chelf's fiduciary breach claims with prejudice. We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

As a full-time, hourly associate at Wal-Mart, Mr. Chelf purchased basic life insurance, as well as short-term and long-term disability insurance, and had the premiums deducted from his paycheck. He also purchased $25,000 in optional term life insurance through Prudential, and that premium was also deducted from his paycheck.

Mr. Chelf requested and obtained a leave of absence from Wal-Mart, and applied for short-term disability benefits, with a last work day of October 17, 2014. In the spring of 2015, Mr. Chelf was still on medical leave and, because his short-term benefits (STDB) had maxed out, he applied for long-term disability benefits (LTDB), which were approved. When he switched to

---

[1]Ms. Chelf also sued Prudential, the issuer and insurer of the optional life insurance policy at issue. However, after losing a partial motion to dismiss, Prudential settled with Ms. Chelf and was dismissed from the lawsuit.

LTDB, the long-term premiums were either paid directly by Mr. Chelf or deducted from other payments from Wal-Mart. Under the Plan documents, however, Mr. Chelf was not required to pay premiums for his short- or long-term disability benefits during the time he was receiving those benefits. Even so, Wal-Mart continued to charge him those premiums. While on disability leave, Mr. Chelf was eligible to continue his elected insurance benefits, such as the optional term life insurance that he had elected. He made life insurance premium payments during his leave. He had accrued 50.8 hours of PTO, and Ms. Chelf alleges that his accrued PTO was sufficient to cover any optional life insurance premiums he owed during his leave.

Mr. Chelf died from natural causes on April 17, 2016. Ms. Chelf filed a claim with Prudential for benefits due to her under his policies. Prudential approved the claim for basic life insurance benefits, but eventually denied her claim for the optional life insurance benefits that Mr. Chelf had elected. Ms. Chelf then submitted a claim with Wal-Mart and the Plan Administrator, which was denied, along with her voluntary appeal. Wal-Mart subsequently upheld the denial of Ms. Chelf's appeal.

Ms. Chelf contends that Wal-Mart incorrectly treated Mr. Chelf's life insurance coverage as terminated prior to his death and did not inform him that the policy had terminated. She claims that under the life insurance policy and Wal-Mart's Summary Plan Description (SPD), conversion to an individual life insurance policy should have been automatic because Mr. Chelf died within 30 days of his insurance coverage terminating.

Ms. Chelf then filed suit against Wal-Mart, alleging violations of ERISA. She brought a count of breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), alleging that Wal-Mart:

a. failed to disclose to [] Mr. Chelf that he had a right to convert his [optional] life insurance;

b. failed to timely remit and to apply Mr. Chelf's [optional] life insurance premium payments;

c. failed to correctly advise Mr. Chelf concerning the actual [optional] life premiums due, if any;

d. failed to apply Mr. Chelf's unpaid time off to any past due [optional] life insurance premiums;

> e.   failed to advise Mr. Chelf that he could apply his unpaid time off to any outstanding [optional] life premiums paid;
>
> f.   failed to comply with ERISA's regulatory requirements, as well as the plan requirements, concerning Mr. Chelf's [optional] life insurance coverage and adverse decisions; and
>
> g.   failed to convey complete and accurate information material to Mr. Chelf's circumstances.

(R. 1, Compl., ¶ 40)  Ms. Chelf asserts that she and Mr. Chelf reasonably relied on Wal-Mart's material misrepresentations and omissions in the course of their decision-making about Mr. Chelf's benefits.

Wal-Mart filed a motion to dismiss.  Wal-Mart attached numerous documents to its motion, including Plan documents (which the district court considered) and documents detailing Ms. Chelf's administrative appeal (which the district court did not consider).  The district court granted Wal-Mart's motion and dismissed Ms. Chelf's breach of fiduciary duty claim with prejudice.  In doing so, the district court determined that Ms. Chelf's allegations fell "outside the scope of ERISA's fiduciary requirements or administrative functions" under 29 C.F.R § 2509.75-8 (D-2).[2]  *Chelf v. Prudential Ins. Co.*, No. 17-cv-736, 2018 WL 4219424, at *6 (W.D. Ky. Sept. 5, 2018).  Ms. Chelf timely appealed.

## II.  ANALYSIS

### A.  Standard of Review

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo.  *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 986–87 (6th Cir. 2018).  In doing so, we take all the plaintiff's well-pleaded factual allegations as true and affirm the district court's dismissal only if the defendants are entitled to judgment as a matter of law.  *Wilmington Trust Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017).

---

[2]Wal-Mart attached several Plan documents to its motion to dismiss, which the district court considered in its analysis.  The district court, however, declined to consider the attachments that required a credibility determination, such as a declaration of a Wal-Mart employee and the appeals documents. For the purposes of this appeal, we review only the documents considered by the district court. *See United States v. Barrow*, 118 F.3d 482, 487 (6th Cir. 1997) ("In general, the appellate court should have before it the record and facts considered by the District Court.").

**B. Applicable Law**

In addition to suing to recover benefits, a beneficiary of an ERISA-governed benefit plan may sue the plan "to obtain other appropriate equitable relief" to redress violations of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). Such violations can include breaches of fiduciary duty: a fiduciary under ERISA is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff. *See James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449, 454 (6th Cir. 2002).

Taking each element separately, ERISA defines a fiduciary as:

> [A] person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"Though ERISA fiduciary status is broadly triggered with any control over plan assets, the inquiry in each case is granular, 'ask[ing] whether [an entity] is a fiduciary with respect to the particular act in question.'" *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 866 (6th Cir. 2013) (quoting *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006)). "[A]n entity that exercises *any* authority or control over [the] disposition of a plan's assets becomes a fiduciary." *Guyan Int'l Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012) (citing *Briscoe*, 444 F.3d at 490–91) (emphasis in original). Discretionary determinations "about whether a claimant is entitled to benefits under the terms of the plan documents" are exercises of fiduciary duty. *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996).

Once an entity is deemed a fiduciary under ERISA, it must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The fiduciary must also act "in

accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions" of ERISA. *Id.* § 1104(a)(1)(D). Fiduciary duties are defined functionally and "attach not just to particular persons, but to particular persons performing particular functions." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc) (quoting *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990)).

ERISA's fiduciary duties also give rise to an obligation to disclose information to beneficiaries in certain circumstances. *See Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 572 (6th Cir. 2013). In general, a fiduciary does not have a duty to "disclose information that [it] is not required to . . . disclose[]," because "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague*, 133 F.3d at 405–06 (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995)). But our court has recognized three scenarios in which a fiduciary has a duty to disclose even when not expressly required under ERISA's disclosure provisions:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*Haviland*, 730 F.3d at 572 (quoting *James*, 305 F.3d at 453).

## C. Discussion

Ms. Chelf's allegations of fiduciary breach fall into two categories. In the first category, she alleges that Wal-Mart breached its fiduciary duties to Mr. Chelf through several failures to disclose certain information, including failing to inform Mr. Chelf of his conversion rights, failing to advise him correctly about premiums he owed, and failing to inform him that his PTO could be used to cover any premiums due. In the second category, the Complaint alleges mishandling of Plan assets, including failing to apply Mr. Chelf's PTO to any premiums he owed and failure to remit payments on his optional life insurance policy to Prudential while collecting his disability premiums in error. The district court determined that Ms. Chelf failed to state a

claim on any theory because Wal-Mart's handling of premiums fell under an administrative, not fiduciary, function, and that Wal-Mart had no obligation under ERISA to provide notice of conversion rights outside what it provided in the SPD.  It did not address the allegations regarding the other misrepresentations and omissions.

We address the mishandling of Plan assets allegations separately from the failure to disclose allegations.

### 1. Mishandling of Plan Assets Allegations

As to the mishandling of plan assets, Ms. Chelf argues that Wal-Mart was acting in a fiduciary capacity when it managed Plan assets and that it misappropriated Mr. Chelf's short- and long-term disability premiums when he was on leave by collecting them when they were not owed.  She also argues that Mr. Chelf had 50.8 hours of accrued PTO, which Wal-Mart should have credited to his optional life insurance premiums, or at least informed him of this available avenue for payment.  These arguments were all dismissed by the district court as being "outside the scope of ERISA's fiduciary requirements or administrative functions under the applicable regulations."  *Chelf*, 2018 WL 4219424, at *6.

In concluding that Wal-Mart did not act in a fiduciary capacity, the district court relied on 29 C.F.R. § 2509.75-8 (D-2), which explains that certain "person[s] who perform[] purely ministerial functions" for an employee benefit plan are not fiduciaries.  *Id.*  Section 2509.75-8 (D-2), however, is limited to "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform [certain specified] administrative functions for an employee benefit plan."  *Id.*  One of these specified administrative functions is the "[c]ollection of contributions and application of contributions as provided in the plan."  *Id.*  This provision, however, applies only to a specified group—those persons who are collecting and applying benefits while exercising no discretionary authority or plan management.  *Id.*  As the provision explains, "a person who performs purely ministerial functions . . . is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render

investment advice with respect to any money or other property of the plan and has not authority or responsibility to do so." *Id.*

Section 2509.75-8 (D-2) is inapplicable here because Wal-Mart did not lack the "power to make any decisions as to plan policy, interpretations, practices or procedures." *Id.* To the contrary, Wal-Mart was a fiduciary as it indisputably exercised control over the Plan's assets when it handled Mr. Chelf's premiums, exercised control over the disposition of the Plan's assets, and had discretionary authority over the administration of the Plan. *See* 29 U.S.C. § 1002(21)(A). It also exercised discretionary authority when it denied Ms. Chelf's appeal. *See Pipefitters Local 636 Ins. Fund*, 722 F.3d at 866–67. And, critically, one of the Plan documents that Wal-Mart attached to its motion—the 2016 Wrap Document—specifies that as a fiduciary, Wal-Mart has the power to "correct errors and make equitable adjustments for mistakes made in the administration of the Plan, including mistakes made in the payment or nonpayment of benefits under the Plan . . . ."

That Plan document gave rise to a number of errors that the Complaint alleges Wal-Mart owed a duty to correct. These included that Wal-Mart collected premiums for Mr. Chelf's short- and long-term disability insurance in error, failed to correct that error or remit those premiums to Prudential for Mr. Chelf's optional life insurance policy, and failed to apply Mr. Chelf's accrued PTO to these insurance premiums. Ms. Chelf adequately alleged that Wal-Mart "exercised control over the life insurance policy and premiums, which constituted a plan asset."

Taking these allegations as true, as we must at this stage, we observe that Wal-Mart was acting in a fiduciary capacity. By failing to correct these alleged errors, Wal-Mart mishandled the Plan's assets and breached its fiduciary duty pursuant to its statutory obligations under ERISA. Such alleged premium improprieties demonstrate a failure to exercise fiduciary duties "'with the care, skill, prudence, and diligence' of a prudent person acting under similar circumstances." *James*, 305 F.3d at 448–49 (quoting *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)). Ms. Chelf's allegations that Wal-Mart's failure to properly follow the Plan's requirements for premiums resulted in the denial of benefits she was owed under Mr. Chelf's optional life insurance policy. These allegations suffice to state a claim for breach of fiduciary duty because they demonstrate that Wal-Mart breached a fiduciary duty, that breach

caused harm to Ms. Chelf, and, if proven after discovery, this breach would entitle her to the equitable remedy of surcharge under 29 U.S.C. § 1132(a)(3). We therefore reverse the district court's dismissal of these claims.

## 2. Allegations of Failure to Disclose

The four remaining allegations seek to impose liability for Wal-Mart's failure to disclose information that is not required to be disclosed under ERISA. The district court opined only on the allegation that Wal-Mart's failure to disclose the conversion rights constituted a breach of fiduciary duty, which it summarily concluded fell outside the scope of ERISA and therefore failed to state a claim. The parties advance additional arguments pertaining to that allegation, which we address separately.

In *Sprague*, 133 F.3d at 406, we "recognized a breach of fiduciary duty under three different conditions: (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so." *Haviland*, 730 F.3d at 572 (quoting *James*, 305 F.3d at 453). Therefore, the question here is whether Ms. Chelf has alleged facts sufficient to demonstrate that the failure to disclose allegations fall within one of these three *Sprague* categories.

Ms. Chelf generally alleges that Wal-Mart failed to provide notice in four instances as a result of Defendants' material misrepresentations and omissions concerning the Plan terms or Mr. Chelf's rights. But the Complaint does not provide facts as to how the allegations fit in one of the *Sprague* categories. Regarding the first category, the Complaint offers no allegations suggesting that Wal-Mart omitted information or provided a misleading statement in response to one of the Chelfs' inquiries. And it does not explain or point to any document or communication disseminated by Wal-Mart on its own initiative in which it failed to include material information or materially misled the Chelfs—the second *Sprague* category. Ms. Chelf, moreover, does not allege that the Plan's SPD was misleading, that she requested or received any particularized information from Wal-Mart regarding the conversion rights, or that Wal-Mart provided incorrect

or misleading information regarding the conversion of the life insurance policy. Without such factual allegations, we cannot reach the conclusion that the Complaint plausibly alleges that Wal-Mart breached a duty to disclose imposed under *Sprague*.

Next, Ms. Chelf contends that the failure to advise Mr. Chelf of his conversion rights exists independently because it arises under the language of the Plan, which she references. Wal-Mart argues that the Plan language should not be considered because it was not in the record when the district court issued its opinion as to Wal-Mart; the Plan was introduced into the record by Prudential only after the district court had ruled on Wal-Mart's motions to dismiss. And, Wal-Mart points out, at no point did Ms. Chelf formally move to amend her Complaint against Wal-Mart to include her argument based on the Plan text. Wal-Mart contends that her arguments based on the Plan text are therefore forfeited.

We agree with Wal-Mart that the Plan language should not be considered at this point. Considering the Plan language at this juncture would contravene the principle that "[i]n general, the appellate court should have before it the record and facts considered by the District Court." *Barrow*, 118 F.3d at 487 (citing *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982)). But we disagree that this issue has been forfeited. "Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel*, 312 U.S. at 556. "This reticence to consider unraised issues is born of the need 'to ease appellate review by ensuring that district courts consider issues first, and to prevent surprise to litigants.'" *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018) (quoting *Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 443 (6th Cir. 2016)). But "[w]e have recognized a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim." *Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015) (citing *Gallenstein v. United States*, 975 F.2d 286, 290 n.4 (6th Cir. 1992)). Thus, as long as a claim or issue was raised before the district court, a party may "formulate[] any argument they like[] in support of that claim here." *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992); *see also Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017); *Leonor*, 790 F.3d at 687. Here, Ms. Chelf's claim was that Wal-Mart breached its fiduciary duty by not providing notice about the right to convert—whether providing that notice was mandated by ERISA or the Plan is merely an

argument in support of the claim against Wal-Mart for failing to do so.  *See Leonor*, 790 F.3d at 687.

The problem, however, is that Ms. Chelf's Complaint did not allege that the terms of the life insurance policy required Wal-Mart to provide Mr. Chelf with notice of his right to convert.  Nor did she allege that the Plan or SPD had any such requirement that would have given rise to such an independent duty.  That is not to say that Ms. Chelf is required to identify particular Plan provisions to state a claim.  Indeed, in the ERISA context, we recognize that it may be difficult for plaintiffs to access the plan and its provisions, and for this reason, plaintiffs need not necessarily identify the specific language of every plan provision to survive a motion to dismiss.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long the facts alleged tell a plausible story.").  But Ms. Chelf must allege sufficient facts to allow an inference that she has a plausible claim.  And if the basis for that claim hinges on the Plan itself, as is apparently the case for the allegations of failure to provide notification concerning Mr. Chelf's conversion rights, then the Complaint must so allege to state a plausible claim for relief.  Because the Complaint has not done so here, we conclude that the district court did not err in dismissing this claim.  On remand, any petition by Ms. Chelf seeking leave to amend the Complaint is entrusted initially to the discretion of the district court.  *See* Fed. R. Civ. P. 15(a)(2) ("The court shall freely give leave [to amend a pleading] when justice so requires.").

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.